# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF PORTSMOUTH V. VIRGINIA RAILWAY AND POWER COMPANY. RECORD NO. 1243.

### January 15, 1925.

1. STREET RAILWAYS—*Grant of Franchise to Use Streets—Franchise as Contract between City and Railroad—Impairment of Obligation of Contract.*—Under its power to grant a street railroad permission to occupy its streets, a municipality cannot rely upon the conditions of that franchise relating to the tracks or facilities as creating a contract superior to the police power and beyond the control of the State, and protected by article 1, section 10, of the Federal Constitution, forbidding the impairment of the obligations of contracts.

2. MUNICIPAL CORPORATIONS—*Charter as Contract—Impairment of Obligation of Contracts.*—Neither the charter of municipality nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution.

3. MUNICIPAL CORPORATIONS—*A Mere Department of the State.*—A municipality is merely a department of the State, and the State may withhold, grant, or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State, exercising and holding powers and privileges subject to the sovereign will.

4. CORPORATIONS—*Public Service Corporations—Confiscation.*—A public service corporation cannot be compelled to consume its property in public service, and thus be forced to submit to confiscation.

5. STREET RAILROADS—*Police Power—Maintenance of Tracks—Permission to Abandon Service.*—The maintenance of street railway tracks as facilities which are necessary for the performance of public service by a street railway company is obvious. That the State, through the exercise of the police power, may require them to be properly maintained in the public interest must be also conceded. It follows, therefore, that under the sovereign power of regulation, as the company may be required to establish and maintain such facilities, the State, under proper·conditions and in order to avoid confiscation,

may also decline to require their continuance, and permit the abandonment of such facilities, if the circumstances justify such action.

6. CORPORATION COMMISSION—*Powers of Commission—Section 156-b of the Constitution of 1902—Abandonment of Service by Street Railroads.*— Under section 156-b of the Constitution of 1902, the State Corporation Commission is empowered to supervise, regulate and control all transportation and transmission companies in matters relating to the performance of their public duties and their charges, and to require them to establish and maintain all such public service, facilities and conveniences as may be reasonable and just; and various statutes have been passed pursuant to the Constitution, the manifest purpose of which is to vest the Commission with all the powers of the State which are necessary to regulate and control public service corporations in so far as their duties to serve the public are concerned. The Commission, therefore, has the power to grant a street railway permission to discontinue the operation of part of its line, when, if forced to continue its operation, its losses would consume the property used in service—in effect, confiscate it.

7. STREET RAILROADS—*Constitutional Law—Abandonment of Service.*—If the State had not by constitution or statute acted, or provided a tribunal with power to permit a street railroad to abandon the operation of a portion of its line, where to force the continuance of such operation would amount to confiscation of the property used in the operation, this failure would neither destroy nor deny the right of such companies to invoke the Federal Constitution through the courts in order to prevent the confiscation and destruction of their property, in performing the public service.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*R. C. Barclay* and *John W. Happer*, for the appellant.

*E. Randolph Williams, W. H. Venable, Frank L. Crocker, R. E. Miller,* and *T. J. Moore*, for the appellee.

PRENTIS, J., delivered the opinion of the court.

[1] The Virginia Railway and Power Company filed

its petition with the State Corporation Commission, asking authority to discontinue the operation of so much of its electric street railway line, generally described as the "County street line," in the city of Portsmouth, upon the ground that if forced to continue its operation in the public service its losses would consume the property used in the service—in effect, confiscate it. The city denied the jurisdiction of the Commission, claiming that the ordinance granting the franchise created an inviolable contract between the company and the city, which was protected by the contract clause of the Federal Constitution (article 1, §10). The Commission overruled this contention and found the following facts:

"* * that the said 'County street line' is operated by the Virginia Railway and Power Company as a part of the electric railway system known as the 'Portsmouth railway division,' in the said city of Portsmouth, and that the said 'County street line' is a single track line running parallel to the double track line of the said company operated on High street, a portion thereof being only about five hundred feet from the said High street, and no portion thereof being further than two blocks away from the said High street; and that the petitioner is now charging a base fare of six cents on the said line, and that the city of Portsmouth permits the operation in competition with the said line jitney busses charging and collecting a rate not exceeding five cent base fare.

"It further appearing to the Commission that the operation of the said 'County street line' is now unremunerative and that the service is maintained at a distinct loss to the company; that for the twelve months of the calendar year 1922 the operation shows total gross earnings of $12,175.00 and that the total operating

expenses for that period were $28,105.00, and that for seven months of the year 1923 this operation resulted in a deficit of $5,235.00."

Having found those facts, the Commission granted the prayer of the petition and authorized the discontinuance of the operation by the company of that line within the city of Portsmouth, the order describing with particularity the specific tracks the use of which was to be discontinued.   The city appealed from this order, and this raises the question here presented.

This court and many other courts have so frequently decided similar questions that it seems to be quite unnecessary to discuss again the underlying principles here involved.   This quotation from *Pawhuska* v. *Pawhuska Oil and Gas Co.*, 250 U. S. 394, 39 S. Ct. 526, 63 L. Ed. 1054, appears to be a conclusive denial of the contention of the city, that under its power to grant permission to occupy its streets, it could rely upon the conditions of that franchise relating to its tracks or facilities as creating a contract superior to the police power and beyond the control of the State.

[2] " 'Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be intrusted to them.   For the purpose of executing those powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property.   The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.   Neither their charters nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property or exempting them from taxation

upon it, constitutes a contract with the State within the meaning of the Federal Constitution.' *Hunter* v. *Pittsburgh*, 207 U. S. 161, 178, 52 L. Ed. 151, 159, 28 Sup. Ct. Rep. 40.

"In *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 4 L. Ed. 629, it was distinctly recognized that, as respects grants of political or governmental authority to cities, towns, counties and the like, the legislative power of the State is not restrained by the contract clause of the Constitution, pages 629, 630, 659-664, 668, 694; and in *East Hartford* v. *Hartford Bridge Co.*, 10 How. 511, 13 L. Ed. 518, where was involved the validity of a State statute recalling a grant to a city, theretofore made and long in use, of power to operate and maintain a ferry over a river, it was said, page 533, that the parties to the grant did not stand 'in the attitude towards each other of making a contract by it such as is contemplated in the Constitution, and as could not be modified by subsequent legislation. The legislature was acting here on the one part, and public municipal and political corporations on the other. They were acting, too, in relation to a public object, being virtually a highway across a river, over another highway up and down the river. From this standing and relation of these parties and from the subject matter of their action, we think that the doings of the legislature as to this ferry must be considered rather as public laws than as contract. They related to public interests. They changed as those interests demanded. The grantees, likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights, and duties modified or abolished at any moment by the legislature. * * * * Hence, generally, the doings between them and the legislature are in the nature of legislation rather than compact, and subject

to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes.' In *New Orleans* v. *New Orleans Waterworks Co.*, 142 U. S. 79, 35 L. Ed. 943, 12 Sup. Ct. Rep. 147, where a city, relying on the contract clause, sought a review by this court of a judgment of a State court sustaining a statute so modifying the franchise of a waterworks company as to require the city to pay for water used for municipal purposes, to which it therefore was entitled without charge, the writ of error was dismissed on the ground that no question of impairment within the meaning of the contract clause was involved. Some of the earlier cases were reviewed and it was said, page 91: 'But further citations of authorities upon this point are unnecessary; they are full and conclusive to the point that the municipality, being a mere agent of the State, stands in its governmental or public character in no contract relation with its sovereign, at whose pleasure its charter may be amended, changed, or revoked, without the impairment of any constitutional obligation, while with respect to its private or proprietary rights and interests it may be entitled to the constitutional protection. In this case the city has no more right to claim an immunity for its contract with the waterworks company than it would have had if such contract had been made directly with the State. The State, having authorized such contract, might revoke or modify it at pleasure.'

"The principles announced and applied in these cases have been reiterated and enforced so often that the matter is no longer debatable. *Covington* v. *Kentucky*, 173 U. S. 231, 241, 43 L. Ed. 679, 683, 19 Sup. Ct. Rep. 383; *Worcester* v. *Worcester Consol. Street R. Co.*, 196 U. S. 539, 548, 49 L. Ed. 591, 595, 25 Sup. Ct. Rep. 327; *Braxton County Ct.* v. *West Virginia*, 208 U. S.

192, 52 L. Ed. 450, 28 Sup. Ct. Rep. 275; *Englewood* v. *Denver & S. P. R. R. Co.*, 248 U. S. 294, 296, 63 L. Ed. 253, 254, P. U. R. 1919-B, 638, 39 Sup. Ct. Rep. 100."

[3] This rule is recently reiterated in *Trenton* v. *New Jersey*, 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 941, 29 A. L. R. 1471, in this language:

"A municipality is merely a department of the State, and the State may withhold, grant or withdraw powers and privileges, as it sees fit. However great or small its sphere of action, it remains the creature of the State, exercising and holding powers and privileges subject to the sovereign will."

In considering the multitude of cases and the expressions of the judges care must be taken to distinguish between those cases in which either the city or the utility is seeking to evade or to modify the contract (in which the contracts are generally upheld), and cases like this in which the State intervenes and either directly or through a commission exercises its sovereign power over such contracts.

Recent cases decided by this court involving contracts as to rates are: *Virginia-Western Power Co.* v. *Clifton Forge*, 125 Va. 469, 99 S. E. 723, 9 A. L. R. 1148; *City of Richmond* v. *C. & P. Telephone Co.*, 127 Va. 612, 105 S. E. 127; *Clifton Forge* v. *Va. Western Power Co.*, 129 Va. 377, 106 S. E. 400; *Town of Victoria* v. *Victoria Ice, Light & Power Co.*, 134 Va. 134, 114 S. E. 92, 28 A. L. R. 562; *Commonwealth* v. *Shenandoah Light & Power Corp.*, 135 Va. 47, 115 S. E. 695; *Richmond* v. *Va. Ry. & P. Co.*, *post* p. 69, 126 S. E. 353, decided today. They state the reasons and cite many authorities establishing the proposition that such contracts, so far as they directly relate to the public service, are made subject to the reserved police power of the State.

[4] That a public service corporation cannot be compelled to consume its property in public service, and thus be forced to submit to confiscation, appears to be perfectly well settled.

Among recent cases showing this is *Brooks-Scanlon Co.* v. *Railroad Commission*, 251 U. S. 396, 40 S. Ct. 183, 64 L. Ed. 323; *Mt. Carmel Public Utility Co.* v. *Utilities Commission*, 297 Ill. 303, 130 N. E. 693, 21 A. L. R. 571.

[5] The maintenance of street railway tracks as facilities which are necessary for the performance of public service by a street railway company is obvious. That the State, through the exercise of the police power, may require them to be properly maintained in the public interest must be also conceded. It follows, therefore, that under the sovereign power of regulation, as the company may be required to establish and maintain such facilities, the State under proper conditions and in order to avoid confiscation, may also decline to require their continuance and permit the abandonment of such facilities if the circumstances justify such action.

[6, 7] The only question here then, as it seems to us, which can be properly raised, is whether or not the State has exercised or provided the proper agency for the exercise of its reserved power. As to this, we have no doubt whatever, for under section 156-b of the Constitution the State Corporation Commission is given the power and is charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies and to that end may make proper rules and regulations. The Commission is also charged with the duty of requiring them to

establi'sh and maintain all such public service, facilities and conveniences as may be reasonable and just, with the power to alter and amend such rules, regulations and requirements from time to time. These powers appear to include the supervision and regulation of every facility the use of which affects the obligations of the transportation company to the public. Then there are the various statutes which have been passed pursuant to the Constitution, which because they have been so often quoted we do not repeat, the manifest purpose of which is to vest the Commission with all of the powers of the State which are necessary to regulate and control such corporations in so far as their duties to serve the public are concerned. We entertain no doubt whatever as to this, but the ultimate result would (in the absence of some valid inhibition) be the same, even if the State had not, by Constitution or statute, acted or provided the tribunal to act for the State, because had it failed to do so, this failure would neither destroy nor deny the right of such companies to invoke the Federal Constitution through the courts in order to prevent the confiscation and destruction of their property, in performing the public service.

That the company should be authorized to abandon these tracks under the facts found by the Commission is manifest, because their continued maintenance and operation would be the taking of the property without due process of law.

While we have never before had occasion to consider the authority of the Commission to permit the discontinuance of facilities theretofore devoted by transportation companies to the public service, its jurisdiction to grant such permission is based upon the same reasons and supported by the same authorities as the power which is as plainly vested in it to prescribe rates and

to require facilities to be maintained. It therefore seems unnecessary further to repeat these reasons or to cite any more cases than those to which we have already referred in this opinion.

The order of the Commission appears to be plainly right.

*Affirmed.*

SIMS, P., concurring.

Yielding to the authority of the holding of this court in *Town of Victoria* v. *Victoria Ice, etc., Co.*, 134 Va. 134, 114 S. E. 92, 28 A. L. R. 562, which involved the same principle as that upon which the decision in the instant case is based, I concur in such decision.