Present: Kinser, C.J., Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

BOARD OF SUPERVISORS OF
JAMES CITY COUNTY, ET AL.
                                        OPINION BY
v.  Record No. 130210    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                      January 10, 2014
WINDMILL MEADOWS, LLC, ET AL.

           FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                       AND JAMES CITY COUNTY
                 Robert W. Curran, Judge Designate


     In this appeal, we address the construction and

application of a statute by a circuit court in ruling upon

cross-motions for summary judgment in a declaratory judgment

action.  In such cases, we review de novo both the

construction of the relevant statute, Newberry Station

Homeowners Ass'n v. Bd. of Supervisors, 285 Va. 604, 611, 740

S.E.2d 548, 552 (2013), and its application to the undisputed

facts stipulated in the record.  Elizabeth River Crossings

OPCO, LLC v. Meeks, 286 Va. 286, 301, 749 S.E.2d 176, 183

(2013); Transportation Insurance Co. v. Womack, 284 Va. 563,

567, 733 S.E.2d 656, 658 (2012).

                            BACKGROUND

     Windmill Meadows, LLC, HHHunt Corporation, and GS

Stonehouse Green Land Sub LLC ("the developers") are all

owners of land within James City County on which they are

developing residential communities.  At various times prior to

July 1, 2010 the developers sought and obtained rezoning of their property to allow for their planned developments. As part of their applications for rezoning, the developers all made proffers to the County which included per-dwelling unit cash payments during different stages of development.

Likewise, Williamsburg Landing, Inc., a non-profit corporation developing a life care community in the County, agreed to make per-dwelling unit cash payments related to the rezoning of its property. Though the terms of these proffers differed, as relevant to this appeal it is not contested that these cash payments were required to be made prior to the date of the completion of the final inspection and the issuance of a certificate of occupancy for each dwelling unit.

In the 2010 legislative session, the General Assembly enacted Code § 15.2-2303.1:1(A), which in relevant part provides, "Notwithstanding the provisions of any cash proffer requested, offered, or accepted . . . for residential construction on a per-dwelling unit or per-home basis, cash payment made pursuant to such a cash proffer shall be collected or accepted by any locality only after completion of the final inspection and prior to the time of the issuance of any certificate of occupancy for the subject property." The statute went into effect on July 1, 2010 and, under a "sunset

2

provision" was to remain in effect until July 1, 2014.[1]  See

2010 Acts chs. 549, 613.

On September 13, 2010, in response to an inquiry from a

member of the General Assembly, the Attorney General issued an

opinion addressing whether Code § 15.2-2303.1:1(A) "applies to

proffer agreements that were formed prior to July 1, 2010."

2010 Op. Atty. Gen. 65 at 1.  The Attorney General opined that

"to the extent the Act does not impair the contract or vested

rights of the zoning applicant, . . . Code § 15.2-2303.1:1

applies to cash payment proffers formed before July 1, 2010 so

that a locality may not accept or demand payment of any

uncollected cash proffer payments until the completion of a

final inspection and prior to the issuance of a certificate of

occupancy for the subject property."  Id. at 4 (emphasis

added).

Although the parties were all aware of the enactment of

Code § 15.2-2303.1:1(A) and the Attorney General's opinion as

to its application, it is not disputed that cash payments for

_____

[1] As initially enacted, Code § 15.2-2303.1:1 had two
subsections numbered 1 and 2.  Subsequent amendments to Code
§ 15.2-2303.1:1 added two additional subsections and
redesignated them as A, B, C, and D.  See 2011 Acts ch. 173;
2012 Acts chs. 508, 798.  For clarity, we will refer to the
subsections by their current designations.  Among other
changes, the amendments have twice extended the sunset
provision date, which at present is July 1, 2017.  Code
§ 15.2-2303.1:1(D).

3

some dwelling units were made by the developers and Williamsburg Landing and accepted by the County in accord with the terms of the proffers after June 30, 2010 and prior to the completion of a final inspection of the dwelling units.  This practice continued until May 18, 2011, when the County Attorney received a letter from Robert Duckett, Director of Public Affairs for the Peninsula Housing & Builders Association, a trade group representing the developers. Duckett questioned the County's practice of accepting the proffers in advance of the time specified in the statute, indicating that the Association believed that the County was required to "revise its proffer acceptance policy and practices to bring them in accordance with [Code §] 15.2-2303.1:1."

On June 30, 2011, the County, on behalf of its Board of Supervisors and the County's acting Zoning Administrator, filed a complaint for declaratory judgment in the Circuit Court of the City of Williamsburg and James City County, naming the developers and Williamsburg Landing as respondents.[2] Within the complaint, the County contended that Code

---

[2] Basic Properties, LLC, another developer of land within the County, was also named as a respondent, but did not enter an appearance in the circuit court and is not a party to this appeal.  The Home Builders Association of Virginia subsequently was permitted to intervene in the action as a respondent.

4

§ 15.2-2303.1:1(A) had no application to proffers agreed to prior to its effective date of July 1, 2010. The County asked the court to determine that the statute "applied prospectively and has no retroactive effect."

On July 25, 2011, Williamsburg Landing filed an answer to the County's complaint. Admitting the basic facts as alleged in the complaint, Williamsburg Landing contested the County's legal argument and conclusion that Code § 15.2-2303.1:1(A) did not affect the County's ability to accept cash proffers prior to the completion of a final inspection. Williamsburg Landing requested that the circuit court "enter such Orders as may be proper based on the Court's determination of the matters raised in the Petition, and that [Williamsburg Landing] be awarded its attorney[']s fees and costs."

On August 25, 2011, the developers filed a joint answer to the County's complaint contesting the County's position and requesting that the circuit court declare that:

> Va. Code § 15.2-2303.1:1 is to be applied retroactively and thus to any and all cash payments owed pursuant to any and all cash proffers requested, offered or accepted for residential construction on a per-dwelling unit or per-home basis during its period of effectiveness and that Respondents are to be awarded reasonable attorney[''s] fees, expenses and court costs in addition to the refund of any and all monies collected or accepted by Petitioners in violation of § 15.2-2303.1:1 of the Code, plus interest, as set forth in Respondents' Counterclaim filed contemporaneously with this Answer.

5

As indicated in their answer, the developers also filed a counterclaim on August 26, 2011 seeking "the refund of any and all monies accepted or collected by the County in violation of [Code] § 15.2-2303.1:1" and attorney's fees and costs.  The claim for fees and costs was based upon an amendment to Code § 15.2-2303.1:1 effective July 1, 2011 which permits a court to "award reasonable attorney fees, expenses, and court costs . . . in an action successfully challenging an ordinance, administrative or other action as being in conflict with this section."  See 2011 Acts ch. 173 (enacting former subsection (B) of the statute); see also current Code § 15.2-2303.1:1(C). On December 1, 2011, the County filed its answer to the developer's counterclaim requesting that it be denied and that the court grant the relief sought by the County in its complaint for declaratory judgment.

The County, Williamsburg Landing, and the developers all filed cross-motions for summary judgment and supporting briefs.  The arguments raised by the parties therein are substantially parallel to those made on brief in this appeal. It will suffice to say that the parties focused their arguments upon whether the language of Code § 15.2-2303.1:1(A) evinced a legislative intent that the statute would be "applied retroactively" to limit the acceptance or demand for

6

payment of cash proffers agreed to and adopted prior to the effective date of the statute.

Following consideration of the briefs and arguments of the parties, the circuit court entered an interlocutory order dated April 11, 2012 in which it ruled that:

> Code § 15.2-2303.1:1 is to be applied to any and all cash payments owed pursuant to any and all cash proffers requested, offered, or accepted for residential construction on a per-dwelling unit or per-home basis, notwithstanding whether such proffered payments were agreed to prior to or after the effective date of that statute.

The court further ruled that "the county violated applicable law by collecting the cash proffers at issue . . . prior to final inspection." Accordingly, the court denied the County's motion for summary judgment, granted summary judgment for the developers and Williamsburg Landing on the County's complaint for declaratory judgment, and granted judgment for the developers on their counterclaim. The court continued the matter to determine whether to award attorney's fees to the developers and Williamsburg Landing.

On October 31, 2012, the circuit court entered a final order of judgment awarding attorney's fees and costs to the developers and Williamsburg Landing. The County objected to the awards on the ground that Code § 15.2-2303.1:1(C) did not provide for an award of attorney's fees for successfully responding to a complaint for declaratory judgment. The

7

County further objected that the developers' "redundant Counterclaim" also did not warrant such an award because the cash proffers had been voluntarily paid, and even if it did, Williamsburg Landing had not filed a counterclaim and, thus, would not be entitled to attorney's fees.

We awarded the County this appeal.

DISCUSSION

The County's first assignment of error reads:

The circuit court erred in determining that Va. Code § 15.2-2303.1:1 is to be applied retroactively, despite the absence of any statement of retroactivity contained within Chapters 549 and 613 of the 2010 Acts of Assembly, without any evidence or witness testimony to rebut the long-standing presumption against retroactive laws, and without reconciling statutes in determining retroactivity.

The County, citing Berner v. Mills, 265 Va. 408, 413, 579 S.E.2d 159, 161 (2003), contends "that retroactive laws are not favored and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." Because the language of Code § 15.2-2303.1:1 does not contain a "clear, explicit, or unequivocal" statement of its retroactive application, the County maintains that its plain language required the circuit court to find that it did not apply to proffers agreed to prior to its effective date.

The County further contends that the legislature could not have intended for Code § 15.2-2303.1:1(A) to apply to cash

8

proffers agreed to prior to its effective date because this would conflict with other statutory provisions regarding proffers. Specifically, the County notes that Code § 15.2-2303.3(A) permits zoning petitioners to agree to pay cash proffers in advance of the issuance of a building permit and provides for a cause of action against a petitioner or successor who fails to ensure payment was made in accord with the proffer. If no cash proffer could be collected prior to a final inspection, the County contends that Code § 15.2-2303.3 would be rendered meaningless.

The developers and Williamsburg Landing respond that the language of Code § 15.2-2303.1:1(A), when properly construed, applies to "any cash proffer" due after June 30, 2010, including those called for in proffers accepted prior to the statute's effective date. They contend that even if the language of the statute is not plain and unambiguous, the circuit court's construction of that language would nonetheless be correct because it is consistent with the opinion of the Attorney General on the statute's application, and in accord with this Court's prior interpretation of the contextual use of "any" in the statute at issue in Sussex Community Services Association v. Virginia Society for Mentally Retarded Children, Inc., 251 Va. 240, 467 S.E.2d 468 (1996). We agree.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

Commonwealth v. Leone, 286 Va. 147, 150, 747 S.E.2d 809, 811 (2013)(quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). "'[W]hen the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it actually has expressed.'" Paugh v. Henrico Area Mental Health & Developmental Servs., 286 Va. 85, 89, 743 S.E.2d 277, 279 (2013)(quoting Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 339, 497 S.E.2d 335, 337 (1998)).

The County is correct that in Berner we stated that it is a "fundamental principle[] of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." Berner, 265 Va. at 413, 579 S.E.2d at 161; see also Adams v. Alliant Techsystems, Inc., 261 Va. 594, 599, 544 S.E.2d 354, 356 (2001); McIntosh v. Commonwealth, 213 Va. 330, 331-32, 191 S.E.2d 791, 792 (1972). Moreover, Code § 1-239, formerly Code § 1-16, provides that

10

"[n]o new act of the General Assembly shall be construed to repeal a former law, as to . . . any right accrued, or claim arising under the former law, or in any way whatever to affect . . . any right accrued, or claim arising . . . before the new act of the General Assembly takes effect."  See also City of Norfolk v. Kohler, 234 Va. 341, 345, 362 S.E.2d 894, 896 (1987); Va. Const. art. I, § 11 ("the General Assembly shall not pass any law impairing the obligation of contracts.").

That having been said, this Court has never required that the General Assembly use any specific form of words to indicate that a new statute or amendment to an existing statute is intended to be applied retroactively.  Sussex Community Services, 251 Va. at 245, 467 S.E.2d at 470; see also Hagen v. Hagen, 205 Va. 791, 796, 139 S.E.2d 821, 824 (1965).  Rather, we look to the context of the language used by the legislature to determine if it "'shows it was intended to apply retroactively and prospectively.'"  Buenson Div., Aeronca, Inc. v. McCauley, 221 Va. 430, 433, 270 S.E.2d 734, 736 (1980)(quoting Allen v. Mottley Construction Co., 160 Va. 875, 889, 170 S.E. 412, 417 (1933)).

Thus, in Sussex Community Services we concluded that the term "any restrictive covenant" in Code § 36-96.6(C), which had been added to the statute by amendment in 1991, applied retroactively to restrictive covenants recorded before the

11

effective date of the amendment.  251 Va. at 244-45, 467 S.E.2d at 470.  Applying a similar analysis to the relevant language of Code § 15.2-2303.1:1(A), it is clear that in the overall context of the statute the legislature intended to limit the time for payment of cash proffers to the period following a final inspection and before the issuance of a certificate of occupancy "[n]otwithstanding the provisions of any cash proffer requested, offered, or accepted."  (Emphasis added.)  The plain meaning of this language clearly indicates that even if an existing cash proffer already agreed to, but not yet due on the effective date of the statute, requires a payment to a locality before the completion of a final inspection, the new statute would apply, "[n]otwithstanding" that requirement, to delay the authority of the locality to demand or accept payment until after the final inspection of a subject unit is completed.

The Attorney General recognized, consistent with Code § 1-239 and Article 1, Section 11 of the Constitution of Virginia that Code § 15.2-2303.1:1(A) could not be applied so as to "impair the contract or vested rights of the zoning applicant" if, for example, a previously agreed to proffer required a payment to be made after the issuance of a certificate of occupancy.  2010 Op. Atty. Gen. 65 at 4.  By way of contrast, the County cannot claim that Code

12

§ 15.2-2303.1:1(A) has divested it of a contact right to collect cash proffers prior to completing a final inspection because, as the Attorney General noted, the rule disfavoring retroactive application of statutes that is embodied in Code § 1-239 and Article 1, Section 11 "operates to protect private parties from the government." 2010 Op. Atty. Gen. 65 at 3; see also City of Portsmouth v. Virginia Ry. & Power Co., 141 Va. 44, 46-47, 126 S.E. 366, 367 (1925)(operation of comparable federal provision). The authority of the County to enforce zoning proffers devolves from the state, and it is certainly within the power of the state to modify or withdraw such power if it sees fit to do so. Virginia Ry. & Power Co., 141 Va. at 50, 126 S.E. at 368.

The circuit court's order likewise reflects its understanding that "Code § 15.2-2303.1:1 is to be applied to any and all cash payments owed" to a locality under a zoning proffer "notwithstanding whether such proffered payments were agreed to prior to or after the effective date of that statute." Contrary to the position taken by the County, the circuit court's construction of the statute does not alter "retroactively" the proffers agreed to by the developers and Williamsburg Landing, rather it acts to limit the time during which the County can demand or accept payments under those proffers.

We also do not agree with the County that there is any conflict between Code § 15.2-2303.1:1(A) and Code § 15.2-2303.3.  There is no conflict between the two statutes when the legislative intent underlying Code § 15.2-2303.1:1(A) is properly recognized as expressing a limitation only on when a locality may require or accept the payment of cash proffers. Nothing in Code § 15.2-2303.1:1(A) prohibits zoning applicants from offering different terms, which might be subject to enforcement if and when the sunset provision of Code § 15.2-2303.1:1(D) becomes effective, consistent with Code § 15.2-2303.3.  Nor does Code § 15.2-2303.3 prohibit a locality from undertaking an action to enforce a cash proffer, provided that the right of the locality to demand payment of the proffer has accrued under the terms of the proffer and Code § 15.2-2303.1:1(A) while it is in effect.

For these reasons, we hold that the circuit court did not err in concluding that payments of cash proffers owed to a locality under rezoning agreements adopted prior to July 1, 2010 were nonetheless subject to Code § 15.2-2303.1:1(A) for the purpose of determining when the locality's right to receive or accept the payment would accrue.  Accordingly, we will affirm the judgment of the circuit court denying the County's motion for summary judgment and granting summary

14

judgment to the developers and Williamsburg Landing on the County's complaint for declaratory judgment.

We now turn to the issue raised in the County's second assignment of error asserting that the circuit court erred in awarding attorney's fees to any of the respondents under Code § 15.2-2303.1:1(C). This Code section became effective on July 1, 2011, and provides that:

> [i]n addition to any other relief provided, the court may award reasonable attorney fees, expenses, and court costs to any person, group, or entity that prevails in an action successfully challenging an ordinance, administrative or other action as being in conflict with this section.

Initially, we note that the County has not asserted on appeal, as it did below, that Code § 15.2-2303.1:1(C) is inapplicable to this case because the complaint for declaratory judgment was filed one day prior to the effective date of that amendment to the statute. We further note that neither the developers nor Williamsburg Landing alleged in the proceedings in the circuit court that any County ordinance was in violation of the statute. Thus, the issue becomes whether either of these parties "successfully challeng[ed] an . . . administrative or other action" of the County that was in conflict with Code § 15.2-2303.1:1.

During oral argument of this appeal, counsel for Williamsburg Landing conceded that in responding to the

15

County's complaint for declaratory judgment, it did not challenge the County's acceptance of any cash proffers from Williamsburg Landing, nor did it file a counterclaim challenging that action or otherwise seek any relief apart from a favorable ruling in the declaratory judgment action with respect to the circuit court's interpretation of Code § 15.2-2303.1:1(A). Accordingly, it is patent that Williamsburg Landing did not successfully challenge an administrative or other action of the County as contemplated by Code § 15.2-2303.1:1(C) in the proceedings in the circuit court, and we hold that the court thus erred in awarding attorney's fees and costs to Williamsburg Landing.

With respect to the attorney's fees awarded to the developers, the County contends that Code § 15.2-2303.1:1(C) has no application to a declaratory judgment action, and that attorney's fees and costs generally are not available to a prevailing party in such actions. The County further contends that the circuit court erred in awarding attorney's fees to the developers under their counterclaim because there is no evidence that the County took any administrative or other action in conflict with Code § 15.2-2303.1:1. Thus, the County maintains that its acceptance of voluntary cash proffers by the developers after July 1, 2010 did not

16

constitute an "action" which the developers successfully challenged in the proceedings in the circuit court.

The developers respond that their counterclaim expressly challenged the "action" of the County in accepting cash proffers prior to the completion of a final inspection of the subject dwelling units. Because Code § 15.2-2303.1:1(A) expressly forbids the County from accepting payments under the proffers prior to the time specified, the developers maintain that the circuit court correctly recognized that the developers prevailed on their counterclaim and, thus, were entitled to recover attorney's fees and costs under Code § 15.2-2303.1:1(C). We agree.

"The purpose of a declaratory judgment proceeding is the adjudication of rights" between the parties as to "an actual controversy." Charlottesville Area Fitness Club Operators Ass'n v. Albemarle County Bd. of Supervisors, 285 Va. 87, 98, 737 S.E.2d 1, 6 (2013). The plain language of the Declaratory Judgment Act, Code § 8.01-184 et seq., "does not authorize a court to make an award of attorney's fees" to a prevailing party. Russell County Department of Social Services. v. O'Quinn, 259 Va. 139, 142, 523 S.E.2d 492, 493 (2000). Nonetheless, in some instances an award of attorney's fees may be proper in an action seeking declaratory relief if such an award is authorized by another statute or contract implicated

17

in the action.  See. e.g., <u>Mozley v. Prestwould Board of Directors</u>, 264 Va. 549, 555-56, 570 S.E.2d 817, 821 (2002). In order for a court to award attorney's fees in such cases, the party seeking the award must show that the statute or contract that authorizes such awards is applicable to the judgment obtained.

<u>Mozley</u> is instructive on the circumstances under which a party to a declaratory judgment action may be entitled to an award of attorney's fees provided for by a statute implicated in the action.  In <u>Mozley</u>, a condominium owner had sought to challenge by a declaratory judgment action an assessment of the costs of repairs to exterior windows of other units on the ground that these repairs did not involve "limited common elements" under the Virginia Condominium Act, Code § 55-79.39 et seq.  <u>Id.</u> at 551-52, 570 S.E.2d at 819.  In affirming the trial court's award of attorney's fees in favor of the condominium board, we held that Code § 55-79.53(A) provided for such an award in any litigation related to disputes concerning "any claims or actions related to the common elements."  <u>Id.</u> at 555-56, 570 S.E.2d at 821.  We concluded that the board was entitled to the award notwithstanding the fact that Mozley "paid the full amount assessed . . . without requiring the board to obtain a judgment against her."

18

In the present case, in both their answer to the declaratory judgment action and their counterclaim, the developers asserted that they were entitled "to the refund of any and all monies collected or accepted by the County in violation of Code § 15.2-2303.1:1."  (Emphasis added.) Although the circuit court's interlocutory order of April 11, 2012 sustaining the developers' motion for summary judgment made no award to the developers for a refund of cash proffers, it nonetheless found that "the County violated applicable law by collecting the cash proffers at issue . . . prior to final inspection."  More significantly, the October 31, 2012 final order expressly provides that "[t]he foregoing [judgment] is without prejudice to the rights of any party hereto to seek further relief in this case or in any other case based on the rulings made by th[is] Court in this order."

Although the County concedes that it accepted cash payments of proffers on individual dwelling units prior to the completion of a final inspection from the developers after June 30, 2010, it nonetheless contends that there is a "total absence of any evidence or testimony challenging a County ordinance, administrative, or other action as [being] in conflict with Va. Code § 15.2-2303.1:1."  This is so, the County maintains, because acceptance of these "voluntary"

payments from the developers did not constitute an "action" on the part of the County. We disagree.

Unlike Williamsburg Landing, which concedes that it challenged only the County's request for a declaratory judgment construing Code § 15.2-2303.1:1(A) to permit it to continue accepting cash payments prior to the completion of a final inspection of a dwelling unit, in both their answer and counterclaim the developers expressly challenged the County's action in having accepted such payments between July 1, 2010 and May 18, 2011. The language of Code § 15.2-2303.1:1(A) unambiguously provides that after June 30, 2010 cash proffers "shall be collected or <u>accepted</u> by any locality <u>only</u> after completion of the final inspection." (Emphasis added.) The plain meaning of "collected or accepted" is that the statute applies to all such payments without regard to whether they are "collected" by demand of the locality or "accepted" by voluntary payment of the property owner. Although the record on summary judgment does not establish what refunds, if any, the developers would be entitled to seek, the record adequately supports the conclusion that the developers prevailed in their challenge to the County's action of

accepting payments in violation of the statute.[3]  Accordingly, we hold that the circuit court did not err in awarding attorney's fees and costs to the developers under Code § 15.2-2303.1:1(C).

### CONCLUSION

In summary, we hold that the circuit court did not err in ruling that Code § 15.2-2303.1:1(A) applies to all payments of cash proffers due on or after July 1, 2010 regardless of whether the proffers were agreed to prior to that date.  We further hold that the court did not err in awarding attorney's fees and costs to the developers, but that the award of attorney's fees and costs to Williamsburg Landing was error in that Williamsburg Landing's response to the County's complaint for declaratory judgment did not constitute a successful challenge to an administrative or other action of the County.

Accordingly, the circuit court's judgment will be affirmed in part, reversed in part, and the case will be

---

[3] We recognize the likelihood that payments made by the developers and accepted by the County between July 1, 2010 and May 18, 2011 subsequently became due under Code § 15.2-2303.1:1(A) during the pendency of this action when final inspections of the dwelling units were completed. However, just as in Mozley, the issue is not whether the party obtained a monetary judgment in addition to a favorable ruling on the declaratory action, but rather whether the record shows that the party prevailed on a claim implicated by the statute providing for an award of attorney's fees.  See 264 Va. at 555-56, 570 S.E.2d at 820-21.

21

remanded for further proceedings to determine whether the developers are entitled to a further award of attorney's fees and expenses for this appeal.

<u>Affirmed in part, reversed in part, and remanded.</u>