Present: All the Justices

SUSSEX COMMUNITY SERVICES ASSOCIATION

v.   Record No. 950843          OPINION BY JUSTICE ELIZABETH B. LACY
                                        March 1, 1996
THE VIRGINIA SOCIETY FOR
MENTALLY RETARDED CHILDREN, INCORPORATED

                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Buford M. Parsons, Jr., Judge


        The issue in this appeal is whether Code § 36-96.6(C)

applies retroactively to restrictive covenants recorded in 1975.

        Sussex Community Services Association (Sussex) is a nonstock

corporation whose members are the owners of lots located in the

Sussex residential subdivision in Henrico County.  All lots in

the subdivision are subject to restrictive covenants that were

recorded on June 10, 1975.  One of those covenants provides that

an owner of real property in the subdivision may not "occupy or

use his Lot . . . for any purpose other than as a private single-

family residence."

        The Virginia Society for Mentally Retarded Children, Inc.

(the Society) purchased a vacant lot in the subdivision and

executed a contract to purchase another lot with an existing

house in the subdivision.  The Society intends to use the

existing house as a group home for six unrelated mentally

retarded young adults, with a paid employee staff of two with one

or more present at all times.  The Society plans to construct a

house on the vacant lot and use it for the same purpose.

        Sussex filed a bill of complaint seeking a declaratory

judgment that the Society's proposed use of the two lots violated

the restrictive covenant limiting the use of lots in the

subdivision to single-family dwellings. The Society responded that the restrictive covenant was subject to Code § 36-96.6(C) which provides that group homes such as those proposed by the Society are considered "residential occupancy by a single family" when construing a restrictive covenant limiting occupancy to members of a single family. Following a hearing and argument of counsel, the trial court concluded that Code § 36-96.6(C) applied to the restrictive covenant and entered an order holding that the covenant could not be enforced against the Society. We awarded Sussex an appeal.

In its appeal, Sussex asserts that the current version of Code § 36-96.6(C), as amended in 1991, cannot be applied to covenants recorded in 1975. Sussex bases its position on the principle that statutes are generally presumed to be prospective in their application unless the General Assembly has manifested its clear intent to apply the statute retroactively. Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 875, 30 S.E.2d 686, 688-89 (1944). In this case, Sussex asserts, there is no manifestation of such a legislative intent.[1]

We begin our analysis of the issue presented by Sussex with an examination of the express language of Code § 36-96.6(C):

> A family care home, foster home, or group home in which physically handicapped, mentally ill, mentally retarded, or developmentally disabled persons reside, with one or more resident counselors or other staff persons, shall be considered for all purposes residential occupancy by a single family when

[1]In oral argument Sussex specifically stated that it is not challenging the ability of the General Assembly to apply Code § 36-96.6(C) retroactively, and that issue is not before us.

> construing any restrictive covenant which purports to restrict occupancy or ownership of real or leasehold property to members of a single family or to residential use or structure.

The language of the section makes it applicable to "any restrictive covenant" restricting occupancy to members of a single family. Therefore, construction of the word "any," added by the 1991 amendment, is pivotal in determining the intended application of the section.

The word "any," like other unrestrictive modifiers such as "an" and "all," is generally considered to apply without limitation. We have held that the phrase "any action" includes actions filed both before and after the passage of the statute in which the phrase was used. Town of Danville v. Pace, 66 Va. (25 Gratt.) 1, 4 (1874). We have said that a provision including the phrase "all condominiums" was consistent with an intent that the provision applies to all condominiums existing at the time the legislation was enacted. Harbour Gate Owners' Ass'n v. Berg, 232 Va. 98, 103, 348 S.E.2d 252, 255 (1986). Similarly in the context of the Workers' Compensation Act, Code §§ 65.2-100 through -1310, we have held that the phrase "an award" is all-inclusive, applying to awards made both before and after statutory amendment. Buenson Div. v. McCauley, 221 Va. 430, 433, 270 S.E.2d 734, 736 (1980); Allen v. Mottley Constr. Co., 160 Va. 875, 889-90, 170 S.E. 412, 417 (1933). In Allen, we noted that in order to apply the statute prospectively only, it would be necessary to judicially amend the statute, "supply[ing] words not found in the statute," so that the phrase would read "any award

hereafter made."  160 Va. at 889, 170 S.E. at 417.

The analysis used in Allen has continued to be a "'decisive' example of a situation where retrospective intent is expressed in legislative language."  Buenson Div. v. McCauley, 221 Va. at 435, 270 S.E.2d at 737 (citing Duffy v. Hartsock, 187 Va. 406, 417-19, 46 S.E.2d 570, 575-76 (1948)).  Our conclusion in Allen, that nothing in the phrase "an award" "confines its operations to either past or future awards, but both are included," 160 Va. at 890, 170 S.E. at 417, is equally applicable to the phrase "any covenant" as used in Code § 36-96.6(C).  The plain meaning of the phrase "any covenant" encompasses all covenants of the type described in the statute without limitation, whether recorded before or after 1991.

The conclusion we reach with regard to the meaning of the plain language of the statute is reinforced by its legislative history.  As originally enacted in 1986, subsection C specifically applied only to restrictive covenants executed after July 1, 1986.[2]  In 1989, the General Assembly established a joint subcommittee to study site selection issues relating to

_____

[2]Code § 36-91(c), the predecessor to Code § 36-96.6(C), provided in relevant part:

> Notwithstanding any restrictive covenant executed after July 1, 1986, which restricts occupancy or ownership of real or leasehold property to members of a single family or to residential use or structure, a family care home, foster home or group home in which no more than six physically handicapped, mentally ill, mentally retarded or developmentally disabled persons reside, with one or more resident counselors or other staff persons, shall be considered for all purposes residential occupancy by a single family.

residential facilities for the mentally disabled.  In its 1990 report, the joint subcommittee identified restrictive covenants as a barrier to securing housing for mentally disabled persons. Report of the Joint Subcommittee Studying Site Selection of Residential Facilities For Mentally Disabled To The Governor and General Assembly of Virginia, Senate Document No. 36, at 3 (1990).  Because Code § 36-96.6(C) as it then existed did not apply to pre-July 1, 1986 covenants, the committee concluded that a segment of the available housing was excluded from consideration for group home residential facilities.  Id.  The joint subcommittee recommended that subsection C be repealed "because it appears to passively encourage discrimination and does not apply to covenants executed prior to July 1, 1986."  Id. at 8-9.

In 1991, the General Assembly deleted language restricting the application of the section to restrictive covenants executed after July 1, 1986 and added the word "any."  These amendments manifest a clear intent of the General Assembly to apply subsection C to restrictive covenants recorded both before and after July 1, 1986.  To conclude otherwise and find that current subsection C applies only to post-1986 restrictive covenants, as Sussex argues, would render the 1991 amendments to the subsection meaningless.  That result would be contrary to the principle that statutory amendments are presumed purposeful and not unnecessary or vain.  Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 600, 331 S.E.2d 476, 479 (1985).

It is true, as Sussex points out, that the General Assembly

often uses the phrase "heretofore or hereafter" to indicate that a statute is to be applied both prospectively and retrospectively.  Indeed that phrase is used in subsection A of Code § 36-96.6.  As demonstrated in the cases discussed above, however, we have never imposed a requirement that any specific word or phrase be used in order to support a finding of clear legislative intent of retroactive application.  See Hagen v. Hagen, 205 Va. 791, 796, 139 S.E.2d 821, 824 (1965).  The failure of the General Assembly to include this specific phrase in subsection C does not override the unambiguous meaning of the word "any" as used in the subsection and the clear import of the 1991 amendments to the subsection.

Accordingly, we will affirm the judgment of the trial court.

Affirmed.

CHIEF JUSTICE CARRICO, with whom JUSTICE COMPTON and JUSTICE STEPHENSON join, dissenting.

I must concede that, in a previous case, this court has given the word "any" the retrospective effect the majority opinion gives it in today's decision.  But it does not follow that the word should always be given such effect.

As the Society points out on brief, this is the issue in the present case:  "Did the General Assembly intend that section 36-96.6[C] apply to all restrictive covenants, or only to those executed after its passage?"  We ascertain legislative intent from the language actually used, considering not only each word that is employed but also how it is utilized in the context of the whole statutory enactment.  When the word "any" is considered

in this context, it becomes clear, in my opinion, that the General Assembly did not intend that "any" should have the retrospective effect the majority gives it today.

The word "any" is used not once but twice in § 36-96.6. It appears in both subsections A and C. Subsection A reads as follows:

> <u>Any</u> restrictive covenant purporting to restrict occupancy or ownership of property on the basis of race, color, religion, national origin, sex, elderliness, familial status, or handicap, whether <u>heretofore or hereafter</u> included in an instrument affecting the title to real or leasehold property, is declared to be void and contrary to the public policy of this Commonwealth.

(Emphasis added.)

Subsection C reads as follows:

> A family care home, foster home, or group home in which physically handicapped, mentally ill, mentally retarded, or developmentally disabled persons reside, with one or more resident counselors or other staff persons, shall be considered for all purposes residential occupancy by a single family when construing <u>any</u> restrictive covenant which purports to restrict occupancy or ownership of real or leasehold property to members of a single family or to residential use or structure.

(Emphasis added.)

If, in the enactment of § 36-96.6, it was intended that the word "any," standing alone, should have retrospective effect, the General Assembly need only have used that discrete word at the beginning of subsection A. Yet, the General Assembly found it necessary to state expressly that the provisions of the subsection would apply to "[a]ny restrictive covenant . . . <u>heretofore or hereafter</u> included in an instrument affecting the title to real or leasehold property." (Emphasis added.)

It is obvious to me the General Assembly did not intend that the word "any," standing alone in subsection A, should have retrospective effect.  It strains credulity, therefore, after its careful use of "heretofore or hereafter" in subsection A, to say the General Assembly intended by its mere use of the word "any" in subsection C, that the provisions of subsection C should also be given retrospective effect.  Accordingly, I would reverse the judgment of the trial court and enter final judgment here in favor of Sussex.