COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

UNPUBLISHED

BRENT E. KYNASTON

                                                MEMORANDUM OPINION[*] BY
v.          Record No. 1243-20-4                JUDGE ROBERT J. HUMPHREYS
                                                JUNE 29, 2021
DANYELLE L. KYNASTON


                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              Carroll A. Weimer, Judge

                Samuel A. Leven (Roy J. Baldwin; The Baldwin Law Firm, LLC, on
                brief), for appellant.

                No brief or argument for appellee.


        Brent E. Kynaston ("husband") and Danyelle L. Kynaston ("wife") were divorced on

November 30, 2018, by the Circuit Court of Prince William County ("the circuit court").  Prior

to their divorce, on August 8, 2018, the parties signed a partial settlement agreement ("the

agreement"), which stated that husband's spousal support obligation was not subject to

modification.  The agreement was incorporated, but not merged, into the final decree of divorce.

On June 15, 2020, husband filed a "Motion to Re-Open and for Declaratory Judgment" and on

June 26, 2020, he filed a "Motion to Modify Spousal Support."  Following a hearing, both

motions were denied by the circuit court.  Husband alleges that the circuit court erred by holding

that an amendment to Code § 20-109(C) retroactively applies to all stipulations and contracts

entered on or after July 1, 2018, and by holding that a retroactive application of the statute did

not violate either the Constitution of the United States or the Constitution of Virginia.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Additionally, husband posits that the circuit court erred by holding that even if the 2020 amendment to Code § 20-109(C) was not retroactive, a modification of spousal support would have been barred under the previous version of the statute.

## I. BACKGROUND

Husband and wife were married on September 26, 1997. Five children were born of the marriage. On August 8, 2018, the parties signed the agreement that stipulated, *inter alia*, the amount and duration of husband's spousal support payments to wife. The agreement also stated that it was to be affirmed, ratified, and incorporated into the final decree of divorce.

On July 1, 2018, an amendment to Code § 20-109(C), which governs the effect of stipulations as to maintenance and support for a spouse, was enacted. As a result, on August 8, 2018, when the parties signed the agreement, Code § 20-109(C) stated

> In suits for divorce . . . [n]o request for modification of spousal support based on a material change in circumstances or the terms of stipulation or contract shall be denied solely on the basis of the terms of any stipulation or contract that is executed on or after July 1, 2018, *unless such stipulation or contract contains the following language: "The amount or duration of spousal support contained in this [AGREEMENT] is not modifiable except as specifically set forth in this [AGREEMENT]."*

(amended July 1, 2020) (emphasis added).

Although the agreement by the parties in this case stated that it was non-modifiable, it did not contain the exact language specified above; the agreement stated, "[s]pousal support shall not be subject to being increased or decreased, by judicial action or otherwise, except as provided in this [a]greement, and the [w]ife specifically waives all claim for additional spousal support from the [h]usband."

On November 30, 2018, the parties divorced and the final decree of divorce incorporated the agreement.

On March 31, 2020, the General Assembly approved another amendment to Code § 20-109(C). The amended code took effect on July 1, 2020, and states, in relevant part

> In suits for divorce . . . [n]o request for modification of spousal support based on a material change in circumstances or the terms of stipulation or contract shall be denied solely on the basis of the terms of any stipulation or contract that is executed on or after July 1, 2018, *unless such stipulation or contract expressly states that the amount or duration of spousal support is non-modifiable*.

Code § 20-109(C) (emphasis added).

On June 15, 2020, husband filed a "Motion to Re-Open and for Declaratory Judgment," seeking a declaratory judgment that the monthly amount of spousal support he owed to wife could be modified upon a showing of a material change in circumstances. Husband argued that the agreement was governed by the 2018 amendment to Code § 20-109(C) and because the agreement did not specifically say "the amount or duration of spousal support contained in this [AGREEMENT] is not modifiable except as specifically set forth in this [AGREEMENT]," as required by the 2018 amendment, modification of his spousal support obligation was not absolutely barred. On June 26, 2020, and prior to the resolution of his motion for a declaratory judgment, husband filed a "Motion to Modify Spousal Support" on the grounds that he had experienced a material change in circumstances due to a significant income decline in March 2020.

The circuit court consolidated husband's motions and following a hearing, stated

> [T]he legislature certainly knew that [the amended statute] was going to go into effect July 1 of 2020 and they clearly used a date. They didn't say "in the past." They said "after [July 1, 2018] . . . ."
>
>    . . . .
>
>  . . . I'm going to deny the motion for declaratory judgment. I find that the statute does apply, the statute that's in effect today that went into effect July 1, 2020. It clearly says that it relates back, retroactive, whatever term you want to use, to July 1 of 2018.

On October 5, 2020, the circuit court denied husband's motions for declaratory judgment and to modify spousal support.[1]  This appeal followed.

## II.  ANALYSIS

### A.  Standard of Review

Husband's assignments of error require statutory and constitutional interpretation.  He asserts that the circuit court erred by holding that the 2020 amendment to Code § 20-109(C) applied to the agreement and by holding that application of the amended statute to the agreement did not violate his rights under both the state and federal constitutions.  He also argues that the circuit court erred in holding that even if the 2020 amendment did not apply, the parties' agreement would have barred a modification of spousal support under the 2018 amendment to Code § 20-109(C).

We review the circuit court's construction and application of the relevant statute to the undisputed facts in the record *de novo*.  Board of Supervisors of James City Cnty. v. Windmill Meadows, LLC, 287 Va. 170, 179-80 (2014).  Likewise, "[c]onstitutional arguments present questions of law that this Court reviews *de novo*."  Farmer v. Commonwealth, 61 Va. App. 402, 410 (2013) (quoting D.L.G. v. Commonwealth, 60 Va. App. 77, 81 (2012)).

### B.  Applying the 2020 Amendment to the Parties' Agreement

The agreement was executed on August 8, 2018.  The circuit court found that the 2020 amendment to Code § 20-109(C) retroactively applied to all agreements entered on or after July 1, 2018, in suits for divorce, which husband argues was error.  Husband concedes on brief that if the

---

[1] Although husband filed two separate motions, one for modification of spousal support and one for declaratory judgment, the circuit court disposed of both in one final written order titled "Declaratory Judgment Order," in which the circuit court explicitly denied husband's motion to modify spousal support.  However, despite orally denying husband's motion for declaratory judgment at the hearing, the circuit court's written order only implicitly denied the motion for declaratory judgment.  Because each of husband's motions involved the same issue, whether the agreement preludes modification of husband's spousal support obligation, we treat them both as resolved by the circuit court's October 5, 2020 order.

2020 amendment lawfully and constitutionally applies to the parties' agreement, his spousal support obligation is non-modifiable.

"Our goal in statutory interpretation is to carry out the General Assembly's intent 'as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'" Bailey v. Spangler, 289 Va. 353, 358 (2015) (quoting Board of Supervisors, 287 Va. at 179-80).

Prior to the 2018 amendment, spouses who entered into a separation agreement providing for spousal support were precluded from later modifying the spousal support amount unless their agreement expressly provided a method for modification. See Newman v. Newman, 42 Va. App. 557, 569 (2004). If the agreement was silent regarding modification, then the parties were completely precluded from any spousal support changes. Id. Essentially, until 2018, Code § 20-109(C) contained a presumption *against* modification of spousal support in the context of separation agreements.

The General Assembly eventually amended the statute to create the opposite effect. On July 1, 2018, an amendment to Code § 20-109(C) was enacted that created a presumption that modification of spousal support *was* permitted for any separation agreement executed on or after July 1, 2018, unless the agreement contained the exact language specified in the statute.

Effective July 1, 2020, the statute was amended again. Essentially, the 2020 amendment, in contrast to the specific language requirement of the 2018 amendment, made separation agreements that used general language forbidding modification of spousal support validly non-modifiable.

The question before us is whether the language "executed on or after July 1, 2018" makes the 2020 amendment retroactively applicable to agreements executed on or after July 1, 2018, but before July 1, 2020.

Husband relies heavily on Paul v. Paul, 214 Va. 651 (1974), in the court below and on-brief. Paul stands for the proposition that "[o]ne of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the parties under the contract." Id. at 653. Husband argues that because the 2018 amendment was the governing law at the time the parties entered into the agreement, the 2020 amendment does not apply.

Husband correctly argues that Virginia law does not favor retroactive application of statutes. See Bailey, 289 Va. at 358. "[N]ew legislation will ordinarily not be construed to interfere with existing contracts, rights of action, suits, or vested property rights . . . ." Harbour Gate Owners' Ass'n v. Berg, 232 Va. 98, 103 (1986). However, "[t]he general rule is that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts . . . *unless the intention that it shall so operate is expressly declared.*" Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 875 (1944) (emphasis added) (citations omitted).

While retroactive laws are not favored, "[t]hat having been said, this Court has never required that the General Assembly use any specific form of words to indicate that a new statute or amendment to an existing statute is intended to be applied retroactively." Board of Supervisors, 287 Va. at 180 (quoting Sussex Cmty. Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, Inc., 251 Va. 240, 245 (2014)). We instead "look to the context of the language used by the legislature to determine if it 'shows it was intended to apply retroactively and prospectively.'" Id. (quoting Buenson Div., Aeronca, Inc. v. McCauley, 221 Va. 430, 433 (1980)).

In Sussex, the Virginia Supreme Court decided that a statute amended in 1991 applied to a covenant recorded in 1975 because the language of the amendment proved the General Assembly intended it to be retroactive. See 251 Va. at 244-45. The statute at issue in Sussex stated that it applied to "any restrictive covenant." Id. at 243. There, the Court said

> The word "any" . . . is generally considered to apply without
> limitation. . . . We have said that a provision including the phrase

> "all condominiums" was consistent with an intent that the provision applies to all condominiums existing at the time the legislation was enacted.

Id.

Another case, Allen v. Mottley Constr. Co., 160 Va. 875 (1933), is a "'decisive' example of a situation where retrospective intent is expressed in legislative language." Sussex, 251 Va. at 243-44 (discussing 160 Va. 875). In Allen, the Virginia Supreme Court concluded that the broad phrase "an award" did not confine its application to either past or future awards, but both were included. See Allen, 160 Va. at 890. Similarly, in Sussex, the Virginia Supreme Court held that the phrase "any covenant" encompassed all covenants of the type described in the statute without limitation, whether recorded before or after 1991. See 251 Va. at 244.

Here, the General Assembly could have changed the effective date from its 2018 amendment to Code § 20-109(C) when it amended the language, but it did not; the legislature instead simply removed and replaced the modification requirement language for all agreements signed after or on July 1, 2018, indicating that it was the General Assembly's intent for the amended language to apply to every separation agreement entered into on or since that date. The General Assembly also used the word "any" in the 2020 amendment, which reads, "any stipulation or contract that is executed on or after July 1, 2018." See Code § 20-109(C). The logic employed in Sussex applies with equal force here: the plain meaning of the phrase "any stipulation or contract" encompasses all agreements of the kind described in the statute that were executed on or after July 1, 2018. To conclude otherwise and exclude agreements executed between July 1, 2018, and July 1, 2020, from the purview of Code § 20-109(C) would render the word "all" meaningless. Such a result would be contrary to the well-established principle that statutory amendments are presumed to be purposeful and not unnecessary or in vain. 251 Va. at 245.

However, here, the date that the parties signed the agreement is not the date that the General Assembly intended the courts to use as the reference point for determining the applicability of the contractual provision in question. Both of the General Assembly's amendments applied to support modification requests of any agreement consummated on or after July 1, 2018. However, as evidenced by the words, "no request for modification of spousal support," the result of the subsequent amendment in 2020 expressly required a circuit court to apply the law in effect at the time a modification was sought. See Code § 20-109(C). The 2020 amendment did not alter any contractual rights or provisions, indeed, it actually allowed them to be enforced.

Therefore, the circuit court's conclusion that the amendment retroactively applies to the parties' agreement executed on August 8, 2018 was not error.

## C. Whether Retroactive Application Is Constitutional

Husband also argues that retroactive application of the 2020 amendment to the parties' agreement is unconstitutional under both the Constitution of the United States and the Constitution of Virginia. Both constitutions forbid the legislature to pass any laws impairing the obligation of contracts. See U.S. CONST. art. I, § 10, cl. 1; VA. CONST. art. I, § 11. This Court has repeatedly held that statutes are unconstitutional if they impair the obligation of contracts or disturb vested rights. See Himes v. Himes, 12 Va. App. 966, 969 (1991) (quoting Brushy Ridge Coal Co. v. Blevins, 6 Va. App. 73, 79 (1988)).

> [T]he legislature may, in its discretion, pass retrospective and curative laws, provided they do not partake of the nature of what are technically called *ex post facto* laws, and do not impair the obligation of contracts, or disturb vested rights; and provided, further, they are of such nature as the legislature might have passed in the first instance to act prospectively.

Duffy v. Hartsock, 187 Va. 406, 419 (1948) (quoting Allen, 160 Va. at 881).

Husband's argument regarding the constitutionality of the amendment as applied to him ignores the reality that application of the 2020 amendment does not impair a contractual

- 8 -

obligation nor disturb any vested right. In this case, the effect of the amended statute is to implement the exact arrangement to which he agreed. The agreement between the parties demonstrates that it was the intent of the parties at the time they entered into the arrangement that husband's spousal support obligation be non-modifiable. Husband's argument is essentially that he had a vested right granted by the 2018 amendment to not honor an agreement that he signed. That argument is patently absurd since any vested contractual right must definitionally flow from the contract itself.

It is true that under the 2018 version of Code § 20-109(C), the spousal support obligation was not absolutely non-modifiable as a matter of law because the agreement failed to use the then-requisite statutory language. However, the *agreement* did not grant husband the right to modify spousal support payments *carte blanche*; it provided for exactly the opposite.

Similarly, the federal test for determining whether a state law has unconstitutionally impaired the obligation of a contract is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." See Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978). The severity of the impairment matters significantly: "Minimal alteration of contractual obligations may end the inquiry at its first stage." Id. at 245. "Contracts enable individuals to order their personal and business affairs . . . [o]nce arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." Id.

Husband is entitled to rely on the rights and obligations for which he contracted, but here, his contractual rights and obligations align with the amended language in Code § 20-109(C). The agreement states that spousal support was not subject to judicial modification and the 2020 amendment forbids modification, as well. As with the application of the Constitution of the Commonwealth, husband's contractual rights and obligations under the federal constitution have not been impaired to any degree. To the contrary, they are enforceable in all respects.

For these reasons, we find that the circuit court did not err in finding that husband's constitutional rights were not violated by application of the 2020 amendment.

### D.  The Circuit Court's Alternate Holding

This case having been decided on the grounds of statutory and constitutional interpretation, we need not address husband's third assignment of error with respect to the circuit court's alternative analysis and judgment.  "Following the traditional doctrine of judicial restraint, [appellate courts] 'decide cases "on the best and narrowest grounds available."'" Chaney v. Karabaic-Chaney, 71 Va. App. 431, 438 (2020) (quoting Levick v. MacDougall, 294 Va. 283, 302 (2017)).

### III.  CONCLUSION

Because we conclude that there was no error in the decision below, we affirm the circuit court's judgment.

Affirmed.