COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia

**PUBLISHED**

FREDERICK COUNTY, VIRGINIA

                                               OPINION BY
v.       Record No. 0981-23-4             JUDGE ROBERT J. HUMPHREYS
                                               JUNE 25, 2024

VIRGINIA DEPARTMENT OF THE TREASURY

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

        Roderick B. Williams, County Attorney (Austin K. Cano, Assistant
        County Attorney, on briefs), for appellant.

        Donald R. Ferguson, Senior Assistant Attorney General (Jason S.
        Miyares, Attorney General; Leslie A.T. Haley, Deputy Attorney
        General; Flora T. Hezel, Senior Assistant Attorney General, on
        brief), for appellee.

        Amicus Curiae: The Treasurers' Association of Virginia, Inc.,
        Local Government Attorneys of Virginia, Inc., Virginia Municipal
        League, and Virginia Association of Counties (Jeffrey Scharf; John
        A. Rife; Steven R. Minor; Taxing Authority Consulting; Elliott
        Lawson & Minor, P.C., on brief), for appellant.


After the State Treasurer refused to honor a tax lien and demand for payment issued by Frederick County pursuant to Code § 58.1-3952, against unclaimed property of the taxpayer held by the Virginia Department of the Treasury, the County summoned the State Treasurer to court to enforce compliance. The circuit court dismissed the action, finding the Commonwealth immune as a sovereign from any such suit. The County now appeals that decision.

BACKGROUND[1]

In June 2022, the Frederick County Treasurer (the County) issued a lien notice and demand for payment to the Unclaimed Property Division of the Virginia Department of the Treasury (the Department), asserting that the Department held property belonging to George Jay Hoover, Jr.[2] According to the lien notice, Hoover owed the County $992.98 in delinquent taxes, penalties, interest, and fees. The County asked the Department to disburse the property to it to cover Hoover's debt, pursuant to Code § 58.1-3952(A). The Department did not respond to the lien notice.

The County moved the Frederick County General District Court to issue a show cause; the district court dismissed the case. After the County appealed to the circuit court, the Department filed a demurrer and motion to dismiss, asserting that sovereign immunity protected it from the County's claim. The circuit court sustained the demurrer and granted the motion to dismiss after a hearing at which the court found that the Department had sovereign immunity from the claim of the County. The County appeals.

ANALYSIS

Sovereign immunity protects the Commonwealth "from burdensome interference with the performance of its governmental duties and preserves its control over state funds, property, and instrumentalities." *Montalla, LLC v. Commonwealth*, ___ Va. ___, ___ (May 9, 2024) (quoting *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)). Generally, it "precludes

---

[1] When the circuit court takes no evidence on a motion to dismiss, we "accept 'the truth of all material facts that are . . . expressly alleged, impliedly alleged, and those that may be fairly and justly inferred from the facts alleged.'" *Bragg v. Bd. of Supervisors*, 295 Va. 416, 423 (2018) (alteration in original) (quoting *Harris v. Kreutzer*, 271 Va. 188, 195-96 (2006)).

[2] As the Department concedes, when it obtains unclaimed property, it becomes the custodian but not the owner of that property and holds the property in trust for the true owner. Code §§ 55.1-2502, -2526. The owner may be the taxpayer or "a creditor, claimant, or payee." Code § 55.1-2500.

the Commonwealth from being 'sued in its own courts . . . without its consent and permission.'" *Id.* at ___ (alteration in original) (quoting *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 101 (2008)). Sovereign immunity applies to both "actions at law for damages" and "suits in equity to restrain governmental action or to compel such action." *Afzall v. Commonwealth*, 273 Va. 226, 231 (2007) (quoting *Alliance to Save the Mattaponi v. Commonwealth Dep't of Env't Quality*, 270 Va. 423, 455 (2005)).

The Commonwealth can waive sovereign immunity and consent to being sued in its own courts. *Montalla*, ___ Va. at ___. But "[o]nly the General Assembly, acting in its capacity of making social policy, can abrogate the Commonwealth's sovereign immunity." *Id.* at ___ (alteration in original) (quoting *Alliance*, 270 Va. at 455). "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Id.* at ___. We review de novo the Department's plea of sovereign immunity. *Commonwealth v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 56 (2014).

The narrow question in this appeal is whether Code § 58.1-3952 waived the Commonwealth's sovereign immunity.[3] "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). We determine that intent "from the plain meaning of the language used." *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)). "A statute is not to be construed by singling out a particular phrase." *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd.*

---

[3] The County argues that sovereign immunity is inapplicable because the County is an arm of the Commonwealth and seeks only to recover property that the Department holds *in custodia legis*. "[W]e decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Here, the best and narrowest ground is whether the statute has expressly waived sovereign immunity to the extent that it is applicable.

*of Trs.*, 283 Va. 190, 195 (2012) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 388 (1983)). Rather, we evaluate the statutory language in the context "of the entire statute" because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Eberhardt*, 283 Va. at 194-95). We "will not consider any portion [of a statute] meaningless unless absolutely necessary." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) (quoting *Logan v. City Council*, 275 Va. 483, 493 (2008)).

Code § 58.1-3952(A) allows a county treasurer or tax collector to "apply in writing to any person" who holds property belonging to a delinquent taxpayer and demand that that person relinquish the property to the treasurer to pay the taxpayer's debt. Once received, the application creates a tax lien on the property. *Id.* "If the person applied to does not pay so much as ought to be recovered out of the debt or estate, the treasurer or collector shall procure a summons directing such person to appear before the appropriate court, where proper payment may be enforced." *Id.* The statute expressly defines "person" to include "the Commonwealth and its agencies and political subdivisions." *Id.* But the statute also provides that "in no event shall the Commonwealth, its agencies, or its political subdivisions incur any liability for the failure to pay the treasurer's or other tax collector's application under this section." *Id.*

By deliberately including the Commonwealth, its agencies, and political subdivisions as a "person" under Code § 58.1-3952(A), the legislature has expressly waived sovereign immunity in this circumstance. "[T]he sovereign is a person or party" under a statute "when the General Assembly names it expressly or by necessary implication." *Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 620 (1983). Recently, the United States Supreme Court found that Congress had waived sovereign immunity by expressly including the United States in the definition of a "person" that was incorporated into a separate statute that created a cause of

- 4 -

action against "any person."[4] *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 465, 475 (2024). In doing so, the Court rejected the United States's argument that it was "subject to all the [statute's] 'substantive requirements' but exempt from any of its liability provisions." *Id.* at 474 ("That kind of 'wholly artificial,' if surely convenient, distinction lacks any grounding in the statutory text, and *has no proper place in our jurisprudence*." (emphasis added) (internal citation omitted)).

In response to several Attorney General opinions[5] concluding otherwise, the General Assembly amended Code § 58.1-3952(A) in 1991 to include "the Commonwealth and its agencies and political subdivisions" as a "person" under the statute. Code § 58.1-3952(A), 1991 Va. Acts ch. 445. And the statute directs a local tax collector to summon "*any* person" to court, "where proper payment may be enforced." Code § 58.1-3952(A) (emphasis added). Thus, the plain language of the statute allows a county treasurer or tax collector to force the Department to appear in court, where the court may enforce payment of the tax lien. The waiver of sovereign immunity is explicit and clear.

Resisting that conclusion, the Department asserts that the Virginia Tort Claims Act (VTCA) contains a clearer waiver of sovereign immunity than Code § 58.1-3952(A). The Department speculates that the General Assembly named the Commonwealth as a "person" only to protect it from future tort suits. And the Department argues that the General Assembly added the sentence limiting the Commonwealth's liability to preserve its sovereign immunity despite including it as a "person." Each argument is unavailing.

---

[4] Like Virginia, federal courts employ a "'clear statement' rule" and will find a waiver of sovereign immunity only when it is "unmistakably clear in the language of the statute." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 466 (2024) (quoting *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

[5] 1967-68 Op. Va. Att'y. Gen. 261; 1981-82 Op. Va. Att'y Gen. 349.

First, the Department's comparison to the language in the VTCA is unpersuasive. "'If no magic words are required' to waive sovereign immunity, then the clarity of 'each statute must be evaluated on its own terms.'" *Kirtz*, 144 S. Ct. at 468 (quoting *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 13 n.4 (1989)). The legislature's decision "to use certain language to waive sovereign immunity" in one statute "hardly means it was 'foreclose[d] . . . from using different language to accomplish th[e] same goal'" in a different statute. *Id.* (alterations in original) (quoting *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 395 (2023)). Indeed, the sovereign may limit its waiver to specific remedies and procedures. *See Afzall*, 273 Va. at 233-34 (holding that the Commonwealth waived sovereign immunity governing a specific procedure for reducing medical liens but did not waive sovereign immunity for declaratory judgment actions concerning those liens). The VTCA, for example, states that "the Commonwealth shall be liable for claims for money" arising from the tortious acts of its employees. Code § 8.01-195.3. By contrast, Code § 58.1-3952 does not authorize tort claims for money damages, so it is unsurprising that the statute uses different language. But both statutes "accomplish th[e] same goal" of waiving sovereign immunity. *Kirtz*, 144 S. Ct. at 468.

"[S]tatutory amendments are presumed purposeful and not unnecessary or vain." *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296, 306 (2020) (quoting *Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children*, 251 Va. 240, 245 (1996)). Unlike the Department's reading of the statute, our construction gives full effect to the General Assembly's inclusion of the Commonwealth as a "person." The Department speculates that the statute includes the Commonwealth as a "person" so that the Department could raise its voluntary compliance with an application as a defense against future tort claims brought by the taxpayer under the VTCA. We determine legislative intent "as expressed by the language used in the statute." *Cuccinelli*, 283 Va. at 425. Not only does Code § 58.1-3952 not reference the

VTCA, but the Department does not point to *any* language in the statute to support its conjecture.[6] If the legislature included the Commonwealth as a "person" solely for the Commonwealth's own protection, it could have said so.

We are equally unpersuaded by the Department's reliance on Code § 58.1-3952(A)'s final sentence, which prohibits the court from imposing "any liability" on the Commonwealth "for the failure to pay" an application. But we must evaluate that language in the context "of the entire statute" to ensure "a consistent and harmonious whole." *Cuccinelli*, 283 Va. at 425. Thus, although "any" often applies without limitation, context may require otherwise. *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 132 (2004) (stating that "'any' can and does mean different things depending on the setting"). For example, our Supreme Court has held that a zoning ordinance allowing the city council to revoke a special use permit if the holder violated "any law" actually meant "any law having a nexus to the purpose of the" permit because an alternative interpretation would have produced "incongruous results" in the context of the entire ordinance. *Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 456-57 (2007). Similarly, the United States Supreme Court has held that a statute's reference to a conviction in "any court" did not apply to convictions in foreign courts. *Small v. United States*, 544 U.S. 385, 388 (2005).

Construing Code § 58.1-3952 as a whole, the liability limitation does not prohibit courts from ordering the Department to comply with the tax lien. An application under Code § 58.1-3952 is an "administrative process" that the property holder must honor even without judicial action. *First Va. Bank v. O'Leary*, 251 Va. 308, 313 (1996). When presented with that administrative process, the holder lacks standing to assert the taxpayer's due process rights. *Id.* at 314. If the holder disregards its administrative obligation, the statute authorizes judicial action

---

[6] The VTCA provides that the Commonwealth is immune from "[a]ny recovery based on . . . '[a]ny claim arising in connection with the assessment or collection of taxes.'" Code § 8.01-195.3(5).

against the holder. Code § 58.1-3952(A). Ordinarily, if the holder releases the assets to the delinquent taxpayer or otherwise misappropriates them, the tax collector can recover from the holder's own assets. *Cf. Va. Builders' Supply, Inc. v. Brooks & Co.*, 250 Va. 209, 213-14 (1995) (garnishment proceedings); *Lynch v. Johnson*, 196 Va. 516, 520 (1954) (explaining that garnishment "is a warning to the garnishee not to pay the money or deliver the property of the judgment debtor in his hands, upon penalty that if he does he may subject himself to personal judgment"). With that understanding, we conclude that the General Assembly intended the liability clause to shield the Commonwealth from liability touching the Commonwealth's own purse. The statute does not prevent a court from ordering the Department to disburse the *taxpayer's* property, which the Department merely holds in trust, to satisfy the *taxpayer's* debt.

An order to relinquish funds held for another is distinct from imposing personal liability on the holder. As the United States Court of Appeals for the Fourth Circuit has explained in a similar context, under Virginia law, a "garnishee can escape all garnishment *liability* . . . by surrendering the [garnished] funds to the court for its proper disposition." *United States v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995) (emphasis added). Moreover, "any liability" is modified by the phrase "for the failure to pay." Code § 58.1-3952(A). Directing the Department to pay the funds it holds in trust in the first instance differs markedly from imposing liability directly on the Commonwealth for its failure to do so. To hold otherwise would "destroy the General Assembly's plainly ascertainable intention." *Kohl's Dep't Stores, Inc. v. Va. Dep't of Taxation*, 295 Va. 177, 190 (2018).

The Virginia Disposition of Unclaimed Property Act further makes it clear that the General Assembly did not intend to immunize the Department from claims on property in the Department's possession belonging to others. Under that Act, the Department must "consider any claim for property" in its possession. Code § 55.1-2533(A). If the Department determines

the claim has merit, it "shall make payment as soon as practical." *Id.* Importantly for our purposes, "[a]ny person aggrieved by an act or decision . . . with respect to a claim for property held by the [Commonwealth under the Act] . . . may commence an action in the circuit court of the county or city in which the property claimed is situated." Code § 55.1-2534. And the Act defines "person" to include "a government or governmental subdivision or agency," meaning that a county treasurer could be an "aggrieved person" entitled to file an action in circuit court. Code § 55.1-2500. Those provisions emphasize that the Department takes possession of unclaimed property only so that it can disburse the property to its true owner, which can include a "creditor,"[7] thereby further undermining the Department's argument that it is immune from claims on that property under Code § 58.1-3952.

Code § 58.1-3952(B) also weakens the Department's argument. Subsection (B) specifies that the wages and salaries of Commonwealth employees "shall be subject to *this section*." Code § 58.1-3952(B) (emphasis added). In other words, an application under subsection (A) may demand the Commonwealth pay a portion of an employee's wages or salary to the county treasurer to cover the employee's tax debt. *Id.* Subsection (B) ends by stating that "[i]n all proceedings under *this section*, the amount found to be due the debtor by the Commonwealth shall be paid as directed by the court." *Id.* (emphasis added). Similarly, the liability limitation in subsection (A) applies to the Department's "failure to pay the treasurer's or other tax collector's application under *this section*." Code § 58.1-3952(A) (emphasis added). Therefore, reading the statute as a harmonious whole, the liability limitation does not prevent the court from enforcing compliance with the statute's substantive provisions. *See Kirtz*, 144 S. Ct. at 474 (rejecting the United States's argument that it was subject to the statute's substantive provisions but not its liability provisions).

---

[7] *See* Code § 55.1-2500.

Finally, the Department's argument that the statute's plain meaning regarding liability restored any immunity expressly waived by the preceding language would produce the absurd result that the 1991 amendments to the statute were essentially a nullity. We will not construe a statute in a way that "would result in a manifest absurdity." *Lucas v. Woody*, 287 Va. 354, 360 (2014) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "[W]e recognize absurdity in only two narrowly defined situations: when 'the law would be internally inconsistent,' and when the law would be 'otherwise incapable of operation.'" *Id.* at 369 (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010)). Here, the statute directs that the treasurer or tax collector "*shall* procure a summons" if the third-party holder refuses to honor the application. Code § 58.1-3952(A). "Shall" is typically directory when addressed to a public official. *Henderson v. Commonwealth*, 77 Va. App. 250, 262-64 (2023). Thus, if the Department is correct, the statute requires the treasurer or tax collector to summon the Department to court upon its refusal to honor the lien, whereupon the court's only option is to dismiss the case on sovereign immunity grounds. That absurd result would render the statute both internally inconsistent and incapable of operation.

CONCLUSION

For all of these reasons, we hold that the General Assembly expressly waived sovereign immunity in Code § 58.1-3952, and the circuit court erred by dismissing the case. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*